IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEANIE B. KAMHOLTZ,

                Plaintiff,

v.                                                                                        OPINION and ORDER

MADISON NATIONAL LIFE INSURANCE                            22-cv-617-jdp
COMPANY INC,

                Defendant.

---

    Plaintiff Jeanie Kamholtz worked as a receptionist at Madison Teachers, Inc. Kamholtz stopped working in January 2021 when pain and an intermittent sensation of spasming inside her eyes made it difficult for her to keep her eyes open for long periods of time. In May 2021, Kamholtz applied for long-term benefits through her Madison Teacher's disability insurance plan, which was administered by defendant Madison National Life Insurance Company. Madison National denied her claim initially and on appeal. Kamholtz brings this action under the Employee Retirement Income Security Act (ERISA) to challenge the denial. The parties have filed cross-motions for summary judgment. Dkt. 12 and Dkt. 15.

    The central issue in this case is whether Madison National properly considered evidence of Kamholtz's eye pain and sensations of spasming. Kamholtz contends that Madison National's decision was arbitrary and capricious because it focused on her normal eye examination results and absence of an identified cause of her symptoms while ignoring her physicians' observations that she could not keep her eyes open because of pain. Kamholtz also contends that Madison National's decision was arbitrary and capricious because it failed to properly review the totality of her mental and physical conditions and did not comply with ERISA's procedural requirements for appeals.

The court concludes that Madison National fully and fairly reviewed the evidence related to Kamholtz's claim and that its decision had rational support in the record. The court will grant Madison National's motion, deny Kamholtz's, and enter judgment for defendant.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

### A. Kamholtz's work and health history

Plaintiff Jeanie Kamholtz began working at Madison Teachers as a receptionist in 2008. Her duties included welcoming visitors as well as secretarial work such as receiving and preparing mail, distributing agendas and minutes for meetings, and helping maintain group calendars. Dkt. 11-2, at 42–43.

In 2010, Kamholtz began experiencing lightheadedness, fatigue, neck pain, muscle tightness, and muscle spasms. *Id.*, at 98. She was referred to the Mayo Clinic for testing and was diagnosed with the genetic condition Ehlers-Danlos Syndrome (EDS) and Postural Orthostatic Tachycardia Syndrome (POTS) in 2011. *Id.*, at 78–79. EDS is a group of genetic disorders that affect connective tissue. *Id.*, at 66. Symptoms can vary among individuals and include joint, muscle, and nerve pain, loose or unstable joints, muscle tension and weakness, and nerve disorders. *Id.* POTS is a cardiac condition that can cause lightheadedness and fatigue. Kamholtz began taking medicine and made lifestyle changes to manage her conditions and was able to return to work with accommodations for her neck and hand spasms.

### B. Kamholtz's disability claim

In the fall of 2020, Kamholtz began experiencing a sensation of intermittent spasming inside her eyes that made her feel that she could not focus her eyes and that it was difficult to

keep them open. In October 2020, Kamholtz saw an optometrist who prescribed her bifocals. Dkt. 11-4, at 128. In January 2021, Kamholtz's symptoms of eye spasming got worse and she stopped working.

In the months after she stopped working, Kamholtz saw numerous providers about her eye spasms and associated eye pain. In February, Kamholtz saw an advanced practice nurse practitioner who referred her to ophthalmology and prescribed medicine for the spasms. *Id.*, at 33. The nurse practitioner noted that Kamholtz reported having eye spasms when she tried to focus her eyes but that her eye examination results were unremarkable. In March, Kamholtz saw the same nurse practitioner, an optometrist, two ophthalmologists, her primary care physician Dr. Lorna Belsky, and a neuro-ophthalmologist. When Kamholtz saw the neuro-ophthalmologist she was able to keep her eyes open, but all the other providers noted that Kamholtz kept her eyes closed for most of her visit with them. Dkt. 11-3, at 172, 174, 178, 185; Dkt. 11-4 at 36, 99.

None of the providers were able to identify the cause of Kamholtz's symptoms. All her providers reported that she could open her eyes for testing, and the ophthalmologists all noted that that her eye exams were "unremarkable." Dkt. 11-3, at 179; 11-4 at 99, 118. The optometrist noted "when her eyes were open for testing, she appeared comfortable." Dkt. 11-3, at 185. The first ophthalmologist saw no spasms and noted "unclear if psychosomatic" as the basis for suggesting that Kamholtz be examined by a neuro-ophthalmologist. *Id.*, at 179. The second ophthalmologist noted that Kamholtz could open her eyes for testing "fully and without visible strain." *Id.*, at 174. The neuro-ophthalmologist reported that various types of eye examinations were normal and that "no further neurophthalmology investigation is indicated." Dkt. 11-4, at 99–100.

3

In May 2021, Kamholtz submitted her claim for disability benefits to Madison National. As an employee of Madison Teachers, Kamholtz was eligible for group long-term disability insurance administered by Madison National. The long-term disability policy at issue is governed ERISA. The policy provides that "Disability and Disabled mean you are, as a result of Physical Disease, Injury, Mental Disorder, Substance Abuse or Pregnancy, unable to perform a majority of the Material Duties of your Own Occupation" and that Madison National will pay disability benefits "after [it] receive[s] satisfactory Proof of Loss." Dkt. 11-5, at 16, 19.

The insured individual must provide objective medical evidence to support her disability, as outlined in the following provision:

> You must submit periodic evidence from your Physician that substantiates, to our satisfaction, that you remain Disabled. This required evidence includes, but is not limited to, objective medical and/or psychiatric evidence from a Physician that confirms your Disability. Subjective complaints alone will not be considered conclusive evidence of a Disability. The attending Physician must be able to provide objective medical evidence to support his/ her opinion as to why you are not able to perform the Material Duties of your Own Occupation or Any Occupation. You must obtain and provide this information at your own expense.

Dkt. 11-5, at 25. The policy also contains a catchall provision that requires the insured to "promptly provide [Madison National] with all information that [it] reasonably decide[s] is necessary to verify and administer your claim for benefits." *Id.*, at 26. An insured individual may request an administrative appeal "[i]f all or part of a claim is denied." *Id.*, at 27. If an individual requests an administrative appeal, she may send "written comments or other items to support the claim." *Id.*, at 28.

In her disability claim, Kamholtz listed her disabling condition as "[EDS], difficulty focusing eyes, spasms, headaches and eye pain, movement in jaw/skull area." Dkt. 11-2, at 27. Dr. Belsky, her primary care physician, submitted an "Attending Physician's Statement" that

4

described Kamholtz symptoms as "weakness, fatigue, unable to focus eyes for vision" and said that Kamholtz was "unable to work at all right now due to neurological symptoms." Dkt. 11-4, at 158–59. Dr. Belsky also opined that "no modifications can help with [Kamholtz's] current eyesight/vision problems." *Id.*, at 159. Although Dr. Belsky listed EDS as a "primary diagnosis," she provided a separate diagnosis code for Kamholtz's eye condition and did not opine that Kamholtz's eye pain and spasming were a symptom of her EDS. *Id.*, at 158.

Madison National reviewed Kamholtz's submission and her medical records. Madison National asked an independent ophthalmologist to review the records and to discuss Kamholtz's condition with the neuro-ophthalmologist she saw. Dkt. 11-5, at 50. The independent ophthalmologist disagreed with Dr. Belsky's assessment that Kamholtz could not focus her eyes and opined that "[f]rom an ophthalmology perspective, there is no clinical evidence that supports functional impairment." Dkt. 11-4, at 206–07. The independent ophthalmologist tried calling the neuro-ophthalmologist on three separate occasions but none of her calls were returned. *Id.*, at 811–12.

On September 15, 2021, Madison National sent Kamholtz a letter denying her claim. Madison National concluded that Kamholtz's "self-reported complaints are not supported by findings on ophthalmic exams." Dkt. 11-2, at 200. Madison National concluded that Kamholtz did not submit objective medical evidence of a functional limitation, which meant that she did not meet the policy's definition of disability.

C. **First administrative appeal**

Kamholtz timely appealed the denial in January 2022. She sent a letter that explained her symptoms in detail, including that when she experienced the spasming sensation it made it difficult to focus her eyes and that the spasming was "excruciatingly painful." Dkt. 11-2,

5

at 132. Kamholtz acknowledged that she can technically see when experiencing spasms. *Id.* But she said that the extreme pain in her eyes prevents her from doing anything other than massaging her eyes with heating pads for long periods of time. *Id.*, at 132–33.

Kamholtz also submitted statements from her two sisters and a close friend, an updated letter from Dr. Belsky, reference materials from the Ehlers-Danlos Society, and letters from Dr. Belsky and Dr. Alexandra Ilkevitch, a physical medicine and rehabilitation doctor. Dr. Belsky's letter provided additional details about Kamholtz's symptoms and treatment that led Dr. Belsky to conclude that "this is a chronic and long term condition that has rendered [Kamholtz] disabled, according to your definitions, as she is unable to perform a majority of the material duties of her own occupation as a receptionist, because she cannot functionally see, despite the fact that her vision appears to be intact." *Id.*, at 58–59. Dr. Ilkevitch saw Kamholtz in August and December of 2021 and stated that it is her "medical opinion that Ms. Kamholtz is not able to work at this time due to her symptoms." *Id.*, at 61–62.

Madison National sent both doctors follow-up questions that asked them to explain the "specific functions that the objective medical evidence has confirmed that Ms. Kamholtz has been unable to perform." Dkt. 11-4, at 174, 179. In response, Dr. Belsky referred to her previous notes and added, "on multiple exams with me [Kamholtz] was unable to keep her eyes open and focus on objects in front of her for more than a few seconds to minutes." *Id.*, at 174. Dr. Ilkevitch responded that "functional testing hasn't been performed" but noted that another doctor said Kamholtz's symptoms were consistent with EDS and that Kamholtz had

an appointment scheduled to see a local expert on EDS.[1] *Id.*, at 179. Neither Dr. Belsky nor Dr. Ilkevitch opined that Kamholtz's eye condition was a symptom of her EDS.

Madison National had two independent doctors review Kamholtz's records. Dr. Howard Grattan, a physical medicine and rehabilitation physician, attempted to discuss Kamholtz's condition with Dr. Belsky, but Dr. Belsky never followed up with him. *Id.* at 216. Dr. Grattan noted that Kamholtz was diagnosed with EDS and that "it is reasonable that the claimant would have a level of functional impairment secondary to" the condition. *Id.*, at 217. Dr. Grattan opined that Kamholtz has functional limitations related to her EDS symptoms in her hands, wrists, and forearms but that there were insufficient findings to conclude that her eye pain and spasms within her eyes prevented her from seeing. *Id.*, at 221. Dr. Nathan Hamburger, an ophthalmologist, concluded that "there are no medical conditions supported by the clinical evidence that are functionally impairing from an ophthalmic perspective." *Id.*, at 225.

On March 18, 2022, Madison National sent Kamholtz a letter denying her appeal. Madison National acknowledged that Kamholtz and her doctors provided detailed reports of her subjective symptoms and explained that the policy required objective medical evidence of a functional limitation, which Kamholtz had not provided. Dkt. 11-2, at 153–55. The letter said that Kamholtz had the option of a second appeal "if you have new or additional information that has not already been submitted." *Id.*, at 156.

---

[1] Although the administrative record contains treatment notes from Kamholtz's subsequent visit with the EDS specialist that Dr. Ilkevitch refers to in her answer, Kamholtz does not provide an opinion from the EDS specialist or argue that anything in the specialist's treatment notes provides objective evidence of her functional limitations.

7

**D. Second administrative appeal**

Kamholtz, now represented by counsel, submitted a second appeal in June 2022. The next day, Madison National acknowledged receipt of her appeal, informed her that a third-party administrator named Disability Management Services (DMS) would handle her appeal, and requested that Kamholtz fill out and return an authorization form for DMS to receive her health records directly from her provider. Dkt. 11-2, at 245. The parties dispute whether Kamholtz returned the signed authorization.

In support of her second appeal, Kamholtz provided the following: an updated personal statement, updated witness statements from a friend and family members, a medical source statement from Nicole Kaiser, LCSW, opining that Kamholtz was unable to maintain a competitive schedule and incapable of even low stress work, an abstract from an article regarding ocular manifestations in EDS, and additional medical records. Dkt. 11-2, at 212.[2] DMS asked an independent cardiovascular physician, Dr. Rahul Jain, to review Kamholtz's submissions to assess how her POTS impacted her ability to function. Dr. Jain opined that Kamholtz was not functionally impaired from POTS. Dkt. 11-1, at 53. DMS also had an independent physical medicine and rehabilitation physician, Dr. Akhil Chhatre, review Kamholtz's records. Dr. Chhatre noted Kamholtz's EDS diagnosis as well as that her chief complaint was eye spasms and eye pain with an unknown cause. Dr. Chhatre then opined that Kamholtz's records did not show a functional impairment. Dkt. 11-2, at 6.

Madison National's records contain two letters addressed to Kamholtz's counsel requesting additional records. Dkt. 11-1, at 16, 23. The letters say that DMS needed progress

---

[2] Kamholtz does not explain what the article on ocular manifestations in EDS said, discuss the article in her briefs, or argue that it is objective evidence of her functional limitations.

8

notes from Kaiser to consider the emotional condition referenced in Kaiser's statement. *Id.* The parties dispute whether Kamholtz ever received these requests, but they agree that DMS never received Kaiser's treatment notes and decided Kamholtz's second appeal without them.

Madison National denied Kamholtz's second appeal in September 2022. Dkt. 11-1, at 13. Madison National summarized the findings of the doctors who reviewed Kamholtz's records and the arguments her counsel made in favor of her appeal and concluded that Kamholtz's records did not establish that she had a functional limitation that prevented her from performing the majority of the material duties of her job. *Id.* Madison National also noted that the medical provider statement from Kaiser said that Kamholtz was seriously limited or unable to meet competitive standards in some abilities related to her mental health, but it concluded that without progress notes or other records to support Kaiser's conclusions, there wasn't evidence that Kamholtz had a functional limitation due to her mental health condition. *Id.*, at 12.

Kamholtz then filed this suit.

ANALYSIS

Kamholtz asks the court to award her disability benefits under the terms of her long-term disability policy under 29 U.S.C. § 1132(a)(1)(B). Kamholtz has the burden of proving her entitlement to benefits under the policy, which requires objective medical evidence that the beneficiary is unable to perform majority of the material duties of her occupation. *See Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005) (ERISA plaintiffs must prove that their insurance contract entitles them to benefits).

The parties agree that the long-term policy gives Madison National discretionary authority to determine eligibility for disability benefits, so this court must review Madison National's decision to deny Kamholtz's claim for benefits under the "arbitrary and capricious" standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Holmstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010). Though not a euphemism for a rubber stamp, under this standard "the reviewing court must ensure only that a plan administrator's decision has rational support in the record." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017) (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)). The court also considers whether the plan administrator communicated "specific reasons" for its determination to the claimant, whether the plan administrator afforded the claimant "an opportunity for full and fair review," and "whether there is an absence of reasoning to support the plan administrator's determination." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009) (quoting *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 832–33 (7th Cir. 2009)).

Kamholtz contends that Madison National's decisions denying her claim for disability benefits were arbitrary and capricious for three reasons. First, Kamholtz contends that Madison National unreasonably disregarded objective evidence of her pain and instead relied on irrelevant ophthalmologic testing results. Second, Kamholtz contends that Madison National failed to consider the totality of her mental and physical limitations. Third, Kamholtz contends that Madison National failed to give her claim a full and fair review because it didn't provide her with the independent physician reports for her second appeal in advance of its decision denying her appeal. The court will address each of these issues in turn.

**A. Madison National's consideration of the medical evidence**

Kamholtz's claim for disability benefits was based on her assertion that eye pain and an intermittent spasming sensation within her eye prevents her from performing the material duties of her job. Kamholtz contends that Madison National improperly equated the lack of a diagnosed clinical explanation for her eye condition with the lack of objective evidence that her symptoms were disabling. Specifically, Kamholtz asserts that Madison National did not properly credit the observations of her physicians as objective evidence of her functional limitations and that Madison National's independent reviewers selectively focused on her normal eye examinations to conclude that her records did not contain objective evidence of a functional limitation.

Disability claims based on conditions involving entirely subjective symptoms pose difficult problems for disability plan administrators like Madison National. Those administrators must decide whether the claimant has met the plan's requirement to provide objective evidence. A "plan may not deny benefits solely on the basis that the symptoms of the claimed disability are subjective." *Majeski*, 590 F.3d at 485 (citing *Hawkins v. First Union Corp. Long–Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003)). In *Hawkins*, the Seventh Circuit concluded that the defendant's decision to deny a claim for benefits was arbitrary and capricious because it relied on a medical consultant's opinion that said, effectively, that conditions that have entirely subjective symptoms cannot be disabling. 326 F.3d at 919. But the Seventh Circuit has distinguished "between the amount of fatigue or pain an individual experience, which as *Hawkins* notes is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007).

Here, Kamholtz's eye condition involves subjective symptoms, and there is rational support in the record for Madison National's conclusion that the objective medical evidence did not support Kamholtz's claim. The only evidence Kamholtz provided to support her having a functional limitation was her subjective reports that she needed to keep her eyes closed because of pain. The parties agree that the cause of her eye pain and sensation of spasming is unknown. The administrative record shows that Kamholtz seems to personally believe the sensation of spasming and pain in her eyes are symptoms of her EDS. Dkt. 11-2, at 135. But in this case, Kamholtz does not contend that her eye symptoms were caused by EDS or that her EDS diagnosis is objective evidence that supports her functional limitations. And Kamholtz's multiple eye examinations were normal. It was reasonable for the independent physician reviewers—and by extension Madison National—to conclude that the objective evidence from her unremarkable eye assessments did not support her subjective reports about the functional limitations from her pain when evaluating Kamholtz's claim that her eye condition rendered her unable to keep her eyes open.

Kamholtz contends that Madison National's decision was arbitrary and capricious because it unreasonably disregarded her providers' consistent observations of Kamholtz keeping her eyes closed, which she argues is objective evidence of her functional limitations. Observations from Drs. Belsky and Ilkevitch that Kamholtz appeared to be in discomfort may be objective evidence to support her subjective reports of pain. But neither Madison National nor the independent reviewing physicians questioned that Kamholtz experienced eye pain. What matters here is whether her doctors' observations provide objective medical evidence of her functional limitations. *See Williams*, 509 F.3d at 323 (explaining that an administrator deciding a disability claim can require "accurate documentation from a treating physician that

12

the claimant's subjective symptoms of pain or fatigue limit his functional abilities in the workplace").

The attending physician statements from Drs. Belsky and Ilkevitch merely repeat Kamholtz's subjective complaints about her functional limitations. Madison National specifically asked these doctors to identify what functional limitations Kamholtz had and the clinical findings that supported those limitations. In response, Dr. Belsky simply referred to her prior notes that said Kamholtz kept her eyes closed during appointments. Dkt. 11-4, at 173–74. Dr. Ilkevitch responded "functional testing hasn't been performed." *Id.*, at 179. Madison National highlighted that part of Dr. Ilkevitch's response when it denied Kamholtz's claim, saying that results from such functional testing "would constitute 'objective medical evidence.'" Dkt. 11-2, at 155. Madison National did not act unreasonably when it decided that the opinions from Drs. Belsky and Ilkevitch were not objective evidence of Kamholtz's functional limitations.

Kamholtz also contends that Madison National should have considered her extensive treatment record as objective evidence of her condition and of the severity of her pain. Dkt. 13, at 18; Dkt. 19, at 6–7. To support this contention, Kamholtz cites several cases in which an extensive history of a claimant unsuccessfully attempting different treatments for pain was objective evidence of the claimant's pain. *See Kaminski v. UNUM Life. Ins. Co. of Am.*, 517 F. Supp. 3d 825, 836 (D. Minn. 2021); *Clark v. Cuna Mut. Long Term Disability Plan*, No. 14-CV-412-WMC, 2016 WL 1060344, at *11 (W.D. Wis. Mar. 15, 2016); *Key v. UNUM Life Ins. Co. of Am.*, No. 07-CV-695-BBC, 2008 WL 3925852, at *8 (W.D. Wis. Aug. 20, 2008). But in each of the cases Kamholtz cites, the claimant's treatment history was relevant because the defendant either expressly criticized the claimant's failure to seek more intense treatment for

pain or ignored the claimant's unsuccessful treatment efforts. Madison National does not assert that Kamholtz should have done more to treat her pain and did not ignore any part of the treatment records that Kamholtz provided.[3] Kamholtz has not shown that it was unreasonable for Madison National to decide, after a full and fair review, that her treatment record of trying bifocals, muscle relaxants, and seeing specialists was not objective evidence of her claimed functional limitation.

Kamholtz further contends that Madison National did not have a reasonable basis for denying her claim because none of the independent physicians who reviewed her claim has specialized knowledge of EDS. But this contention ignores that it was Kamholtz who had the burden of providing objective evidence of her functional limitations. If Kamholtz believed that a provider with specialized knowledge of EDS would provide evidence to substantiate her claim, then she needed to offer evidence from such a provider.[4]

Ultimately, Madison National had to weigh the fact that Kamholtz's providers observed her keeping her eyes closed and that Dr. Belsky and Dr. Ilkevitch believed her subjective reports of pain with the rest of the evidence in the record. It did exactly that when it reviewed her medical records, had independent physician reviewers do the same, and decided that Kamholtz had not provided sufficient objective medical evidence to qualify as disabled under her

---

[3] In her opposition to Madison National Life's motion for summary judgment, Kamholtz asserts that her record contained evidence of abnormal testing results that support her contention that Madison National Life failed to conduct a full and fair review of her medical records. But Kamholtz doesn't explain how the findings are evidence of a functional limitation, so this argument fails.

[4] Kamholtz also contends that Madison National needed to explain what type of objective medical evidence it wanted her to provide. But Kamholtz does not make this argument until her reply brief, so she forfeited it.

long-term disability policy. The court concludes that Madison National had a rational basis in the record to deny Kamholtz's claim.

**B. Madison National's consideration of Kamholtz's mental health provider**

Kamholtz contends that Madison National failed to consider whether Kamholtz had functional limitations from the totality of Kamholtz's mental and physical symptoms. Kamholtz's arguments about the combined effects of her conditions primarily concern the statement from Kamholtz's counselor, Nicole Kaiser.[5] Kamholtz provided Kaiser's statement in support of her second appeal, and it is the only evidence she offers of her having a mental health condition. Kamholtz contends that Madison National's statement that it "received insufficient evidence to support a mental health condition(s) which would lead to total impairment" reveals two problems: (1) that Madison National did not make reasonable efforts to obtain evidence related to Kamholtz's mental health, and (2) that Madison National did not consider whether her mental conditions in conjunction with her physical symptoms prevented her from working.

As for the first argument, Kamholtz contends that Madison National did not give Kamholtz the opportunity for full and fair review because it did not follow up after Kamholtz's counsel did not respond to its request for progress notes from Kaiser. The parties dispute who was to blame for Kamholtz not providing the requested records and whether Kamholtz provided authorization for DMS to have independently requested them. Even if the court were

---

[5] Kamholtz also asserts that Madison National "was required to consider Kamholtz's eye symptoms and mental health conditions in conjunction with the impact of her [EDS] on the other parts of her body" and contends that if had done so it would have concluded that she met the policy's definition of disability. Dkt. 13, at 22. But Kamholtz admits that her wrist, hand, and joint symptoms from EDS are not independently disabling, and does not explain what evidence of these symptoms Madison National did not consider, so this argument fails.

to accept Kamholtz's version of the facts (that Madison National faxed its request to the wrong number and did nothing to follow up about the lack of response), the most that Kamholtz has shown is that Madison National did not diligently pursue obtaining additional records that might have helped its review. But it was Kamholtz who had the burden of providing evidence to support her disability. And Kamholtz has not argued that anything in the progress notes would have provided objective evidence to support her claim.

As for the second argument, Kamholtz contends that Madison National failed to consider evidence of conditions that did not provide an independent basis for disability. Kamholtz's argument appears to be that Madison National could not have given Kaiser's statement a full and fair review if it considered evidence related to her mental health completely separately from her physical symptoms. But this is really an argument about the weight that Madison National gave to certain evidence, not its failure to review the evidence. Kamholtz has not shown that Madison National ignored Kaiser's statement about her mental health or pointed to any evidence in the record that it failed to consider. To the contrary, Madison National called out that Kamholtz provided new information about her mental health in her second appeal and that Kamholtz offered Kaiser's statement as evidence that Kamholtz was "dealing with mental health issues as a result of having to cope with her life altering medical conditions." Dkt. 11-1, at 6, 10. Madison National's denial letter accurately summarized Kaiser's statement, which described Kamholtz's mental limitations as "being overwhelmed with her physical/medical issues would affect her ability to deal [with] work stress" and said that "the experience of pain and physical symptoms exacerbates the psychiatric condition." Dkt. 11-3, at 24. In the absence of evidence to support Kaiser's conclusions or provide objective evidence of limitations related to her mental health, it was reasonable for Madison

National to decide that Kaiser's ipse dixit statement was insufficient to show that Kamholtz was disabled—either solely because of her mental health condition or due to her mental health condition in combination with her other conditions. The court concludes that Madison National's assessment of the totality of Kamholtz's mental and physical health records had rational support in the record and that Madison National provided sufficient reasoning to support its decision.

## C.  Procedural challenge

Kamholtz contends that Madison National did not provide her a full and fair review because it did not provide her with a copy of the independent physician reports from Drs. Jain and Chhatre before it made a final determination on her claim. Disability benefits plans governed by ERISA must require the plan administrator reviewing a claim to "provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination . . . in connection with the claim" before issuing an adverse benefit determination. 28 C.F.R. § 2560.503–1(h)(4)(i).

The parties agree that Kamholtz did not receive a copy of the independent physician reports related to her second appeal until Madison National sent the denial letter. But Madison National contends that the rules governing procedures for mandatory appeals don't apply to Kamholtz's optional second appeal. Nothing in the text of 28 C.F.R. § 2560.503–1(h)(4) suggests that it only applies to appeals that are mandatory under a benefit plan, and Madison National does not offer any authority for its assertion that the regulations governing the procedure for claim determinations apply only to mandatory appeals.

But even if the court concludes that Kamholtz was entitled to receive the independent physician reports in advance of Madison National's decision, she fails to show that this procedural error requires remand to Madison National. When a party seeks remand to address a procedural violation in an ERISA benefits appeal, courts may consider whether the claimant was prejudiced by the procedural violation before remanding the case for further administrative proceedings. *See Zall v. Standard Ins. Co.*, 58 F.4th 284, 297 (7th Cir. 2023) (discussing the First Circuit's analysis of prejudice in *Jette v. United of Omaha Life Ins. Co.*, 18 F.4th 18 (1st Cir. 2021)).

Kamholtz does assert that she was prejudiced by Madison National's failure to provide her with an opportunity to review the reports from Drs. Jain and Chhatre. Dkt. 13, at 23. However, Kamholtz does not provide any support for that assertion. Dr. Jain's report focused on Kamholtz's POTS, and Kamholtz doesn't claim that her POTS caused any functional limitations that would prevent her from working. As for Dr. Chhatre's report, his opinion offers essentially the same opinion as Dr. Grattan, the physical medicine and rehabilitation doctor who provided a report in connection with Kamholtz's first appeal. Kamholtz had the opportunity to respond to the opinions in Dr. Grattan's report when she filed her second appeal. The only difference that Kamholtz identifies between the two reports is that Dr. Grattan opined that Kamholtz would have certain non-disabling restrictions in her ability to lift, carry, and pull more than 10 pounds, which Dr. Chhatre did not include in his report. But Kamholtz doesn't argue that these functional limitations would have established that she was disabled. Nor does Kamholtz say that she would offer any new evidence or argument in response to Dr. Chhatre's report. This distinguishes Kamholtz's case from both *Zall* and *Jette* because in both those cases it was clear that the plaintiffs could have provided a substantive

18

response to the reports in question if given the opportunity to do so. The court concludes that Kamholtz was not prejudiced by Madison National's failure to provide the reports of Drs. Jain and Chhatre in advance of its denial for her second appeal, so any procedural error by Madison National does not require remand for further consideration of Kamholtz's claim.

## ORDER

IT IS ORDERED that:

1. Plaintiff Jeanie Kamholtz's motion for summary judgment, Dkt. 12, is DENIED.

2. Defendant Madison National Life Insurance Company, Inc.'s motion for summary judgment, Dkt. 15, is GRANTED.

3. The clerk of court is directed to enter judgment and close the case.

Entered January 22, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge